UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

IN RE:                                        )
                                              )
Sharon Williams McNeill,                      )        Case No. 05-82077
                                              )
         Debtor.                              )
                                              )

**ORDER AND OPINION SUSTAINING OBJECTION TO CONFIRMATION**

This matter came on before the Court on February 21, 2006, after due and proper notice to all parties in interest, for consideration of the Objection of Pacific Land Exchange to Confirmation of Plan. Appearing before the court was P. Wayne Robbins, counsel for the Debtor, Susan E. Driscoll, counsel for Pacific Land Exchange, and Benjamin E. Lovell, counsel for the Chapter 13 Trustee. Having considered the memorandums of law and the motion, the Court makes the following findings of fact and conclusions of law:

**FACTS**

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on July 21, 2005. On Schedule A of her petition, the Debtor listed real property (the "Real Property") consisting of a double-wide mobile home on 2.3 acres of land located in Eagle Springs, North Carolina. The wheels for the mobile home were removed when it was placed on the real property, and it was placed on a concrete foundation. Pacific Land Exchange filed a proof of claim (the "Claim") in this case in the amount of $74,291.22, evidenced by a promissory note ("Note") in the original principal amount of $35,000.00. The Note matured prepetition, on February 10, 1993.[1] Pacific Land Exchange is secured by a deed of trust against the Debtor's

---

[1] The Note provided for 35 payments of principal and interest in the amount of $444.17 per month with a balloon payment of $32,756.72. The Claim includes principal, arrearage, and

Real Property (the "Deed of Trust") that grants a lien against the 2.3 acres of real property "including all houses, buildings, improvements, and fixtures thereon; now or hereafter erected or attached to the property."  Both the Note and Deed of Trust had been assigned to Pacific Land Exchange by First American Savings Bank.  Pacific Land Exchange also produced a certificate of title to the mobile home reflecting a first lien held by First American Savings Bank.

In her original Chapter 13 plan filed on July 28, 2005 (the "Plan"), the Debtor proposed payments of $550 per month ever a period of 36 months.  The Debtor also proposed to pay the claim of  Pacific Land Exchange as a long-term nondischargeable debt through the Plan and to cure any prepetition arrearage through the Plan. Pacific Land Exchange objected to the Plan and a hearing was held on October 13, 2005.  At the hearing, the Court denied confirmation of the Plan on the basis that the Claim of Pacific Land Exchange was treated as a long-term debt when the Note had matured prepetition.  The Court granted the Debtor 30 days to file an amended plan, and if the Debtor failed to do so, the case would be automatically dismissed without further notice or hearing.

The Debtor filed an amended plan on November 8, 2005 (the "Amended Plan").  The Amended Plan proposed payments of $600.00 per month and proposed to pay the Claim of Pacific Land Exchange as a secured claim at the contract interest rate.    Pacific Land Exchange again objected to confirmation.  The plan payments as proposed in the Amended Plan are not sufficient to pay the Claim as filed.  In addition, Pacific Land Exchange contends that pursuant to 11 U.S.C. § 1322(b)(2), neither the amount of the Claim nor the maturity date of the Claim can be modified in any way. Thus, Pacific Land Exchange argues the plan is not feasible and

---

interest, as well as $15,452.02 in attorneys' fees.

confirmation must be denied.

## ANALYSIS

The first issue presented is whether Pacific Land Exchange's claim is secured only by a security interest in real property that is the Debtor's principal residence and, as such, cannot be modified under the terms of her Amended Plan pursuant to 11 U.S.C. § 1322(b)(2). The power to modify secured claims in Chapter 13 cases is limited by § 1322(b)(2) to claims "other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). Accordingly, if the claim is secured solely by a debtor's residential real property, § 1322(b)(2) operates to prohibit the modification of the mortgage lender's rights. Nobleman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106 (1993).

In the context of residential mobile homes, § 1322(b)(2) applies to protect the mobile home lender from modification of its claim only if the mobile home can be defined as real property under state law. If the mobile home is not considered real property, then the claim would not be "secured only by a security interest in real property." In North Carolina, real property is defined by N.C. Gen. Stat. § 105-273(13) as follows:

> "Real property," "real estate," and "land" mean not only the land itself, but also buildings, structures, improvements, and permanent fixtures on the land, and all rights and privileges belonging or in any way appertaining to the property. These terms also mean a manufactured home as defined in G.S. 143- 143.9(6) if it is a residential structure; has the moving hitch, wheels, and axles removed; and is placed upon a permanent foundation either on land owned by the owner of the manufactured home...

N.C. Gen. Stat. § 105-273 (13).

In this case, there is no dispute that once the mobile home was placed on the real

3

property, the wheels and axles were removed and the mobile home was affixed to a concrete foundation.  Furthermore, this is not a situation in which a debtor gave a creditor a security interest in a mobile home as personal property, and then affixed that mobile home to real property and granted a third party a lien on the real property.  In such a situation, the mobile home would remain personal property as between the parties.  See Peoples Savings & Loan Ass'n v. Citicorp Acceptance Co., 407 S.E.2d 251 (N.C. App. 1991).  Thus, the court finds that the mobile home became an improvement or fixture that is encumbered by the terms of the Deed of Trust.[2]  Because the mobile home became realty, Pacific Land Exchange's Claim is secured only by real property that is the Debtor's principal residence.  As such, Pacific Land Exchange's Claim may not be modified pursuant to § 1322(b)(2).

Finding that § 1322(b)(2) applies does not end the court's inquiry as to whether Pacific Land Exchange's Claim may be paid in full over the life of the Amended Plan, because § 1322(c)(2) provides as follows:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law--
> ...
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

---

[2] It is noted that at the time the mobile home was affixed to the Debtor's real property, Pacific Land Exchange was not legally obligated to surrender the certificate of title to the Division of Motor Vehicles.  Effective in 2002, N.C. Gen. Stat. § 20-190.2 now provides that if a mobile home qualifies as real property as defined in N.C. Gen. Stat. § 105-273(13), the owner must submit an affidavit to the Division and surrender the certificate of title.  N.C. Gen. Stat. § 20-190.2. In any event, in this case, it does not appear that the lien on the certificate of title was ever transferred to Pacific Land Exchange.

11 U.S.C.A. § 1322 (c)(2).  As a result, the court must determine whether the Debtor may cure the Claim of Pacific Land Exchange pursuant to  § 1322(c)(2).

Pacific Land Exchange argues that §1322(c)(2) does not apply to a loan that matures pre-petition, but rather applies to curing payment defaults that result in the acceleration and demand of a note.  However, in In re Witt, 113 F.3d 508 (4th Cir. 1997), the Fourth Circuit found that §1322(c)(2) permits a debtor to cure maturing obligations by paying the remainder of the debt over the life of a Chapter 13 plan.  In addition, the plain meaning of the language found in §1322(c)(2) does not limit the section's application to mortgages that have been accelerated, but extends it to any claim secured by a security interest on the debtor's principal residence where the last payment on the mortgage is due before the last plan payment is due. 11 U.S.C. § 1322(c)(2). There is no distinction made in the statute between curing a default on a loan that matures post-petition, but prior to completion of the plan, and a loan that matures pre-petition.

Furthermore, many courts interpreting § 1322(c)(2) have concluded that a mortgage that matures or balloons before the petition date can be paid in full through a Chapter 13 plan. In re Kelly, 283 B.R. 808 (Bankr. M.D. Fla 2002); In re Ibarra, 235 B.R. 204 (Bankr. D.P.R. 1999); In re Watson, 190 B.R. 32 (Bankr. E.D. Pa. 1995); In re Jones, 188 B.R. 281 (Bankr. D. Or. 1995); In re Dixon, 151 B.R. 388 (Bankr. S.D. Miss. 1993).  This is not a situation in which the Debtor is seeking to modify the  secured claim by changing the maturity date.  See In re Burton, 172 B.R. 533 (M.D.N.C. 1993) (plan providing for monthly payments with new date set for the final balloon payment was an impermissible modification).  Rather, the Debtor is seeking to cure her default, that is, the missed balloon payment, by making the balloon payment in equal

5

installments over the life of the Amended Plan.

In sum, the Debtor may utilize §1322(c)(2) to pay the claim of Pacific Land Exchange in the amount of $74,291.22 in full through her Chapter 13 plan with contract interest. Nevertheless, a payment of $600.00 per month as proposed by the Debtor in the Amended Plan is clearly insufficient to pay the Claim within the 60 month limitation under 11 U.S.C. § 1322(d). Accordingly, confirmation of the Debtor's Amended Plan must be denied on the basis of the lack of feasibility pursuant to 11 U.S.C. § 1322(d). Furthermore, with income in the amount of $1,353.40 per month, as indicated on Schedule I of the Debtor's Petition, the court finds that the Debtor will not be able to propose a feasible plan unless she surrenders the Real Property securing the Claim.

Based upon the foregoing, Pacific Land Exchange's objection to confirmation of the Debtor's Plan is sustained. The Debtor has twenty (20) days from the entry of this order in which to file a further amended plan that provides for the release of the Real Property. In the event the Debtor fails to file such a plan, this case will be dismissed without further notice or hearing.

IT IS SO ORDERED.

## SERVICE LIST

**ALL PARTIES OF RECORD AS OF THE DATE OF THE ORDER SHALL BE SERVED BY THE BANKRUPTCY NOTICING CENTER**